## THE STAMFORD.

(District Court, S. D. New York. October 3, 1906.)

COLLISION—SCHOONER AND TUG AND TOW MEETING—CHANGE OF COURSE BY SCHOONER.

The testimony of disinterested witnesses *held* to sustain the contention of a tug that a collision between her tow and a meeting schooner in Long Island Sound was brought about solely by a change of course on the part of the schooner, after she had passed the tug at a safe distance, and not to the failure of the tug to allow sufficient margin for passing.

In Admiralty. Suit for collision.

Wing, Putnam & Burlingham, for libellants.
James J. Macklin, for the Stamford.

ADAMS, District Judge. On the 14th of April, 1906, between 11 and 12 o'clock A. M., a collision occurred near Execution Light, Long Island Sound, between a loaded stone scow, without a rudder, in tow of the steamtug Stamford, bound for Mamaroneck, New York, from New York City, and the three masted schooner Lizzie Lane bound light from Onset, Massachusetts, to New York. It was a clear day, the tide being half flood, and the wind was light from about south by east. The tug and scow were proceeding against the tide at about the rate of three miles an hour by the land, the scow following straight behind the tug. The schooner was close hauled on the port tack under a full sail, except the outer jib, and making about the same speed. The vessels were seen by each other in ample time to have avoided collision but they did not do so, the starboard corner of the bow of the scow being brought into contact with the starboard bow of the schooner, in consequence of which the schooner suffered to an alleged extent of $1,500.

The burden of avoiding the schooner being on the tug, she seeks exoneration from the consequences of the collision by alleging and endeavoring to establish that after the tug and schooner passed each other, starboard to starboard, the schooner closed in on the tug and tow and brought about the disaster. The schooner, on the other hand, alleges that she kept her course as well as a light and somewhat unsteady wind would permit and the tug was in fault because she did not keep the tow out of the schooner's way, and for endeavoring to pass on the wrong side and in failing to allow for the schooner's necessary leeway.

The tug's claim, more in detail, is that she was well over to the north side of the channel and when she first saw the schooner the latter was 4 points on her own starboard bow; that on the courses of the vessels, about parallel, they should have passed starboard to starboard with plenty of room if each vessel held her course and there was at least 200 feet of clearance when the tug and schooner were abreast, but after they passed, the schooner changed her course several points towards the scow.

The schooner's claim, more at length, is that her master at the helm saw the Stamford from the port side when she was about a half a mile away and almost dead ahead. He expected the tug to

change her course and pass the schooner to the windward but the tug failed to do so and passed very close, not more than 60 feet away, on the starboard side, apparently on a parallel course but he became alarmed when he could not see the scow, which was behind on a long hawser, about 70 fathoms in length, and pinched the schooner up into the wind so that her top sails were shaking or lifting and when the tug was abreast of his vessel's quarter he put the wheel hard down and fastened it so. It is shown that the master then ran forward and ordered the fore sheet let go and slacked up the jib sheets. Two of the men who had been below ran to the fore boom tackle and hauled out the fore boom but this was just in the collision.

The master of the tug noticed that the schooner was sailing close hauled on the port tack and that she was lightly loaded but admits that he made no provision for any leeway the schooner would make. He says he kept his course to pass to the leeward of the schooner, hence it is argued that in having failed to provide for the inevitable leeway, his tug was-in fault.

The foregoing and the burden which was upon the tug to keep out of the schooner's way would almost necessarily determine the controversy in the schooner's favor were it not that the tug has produced some disinterested witnesses who testify that there was ample margin for safe passing in the way the tug attempted to go had not the schooner changed her course. These witnesses were from the tug N. B. Starbuck, bound from Bridgeport, Connecticut, to New York, with a light barge in tow on a long hawser. The master who was at the wheel said he was overtaking and passing the schooner and abreast of her at the time of the collision. He judged that when the Stamford passed the schooner she was from 150 to 200 feet off. He testified positively that the schooner fell off towards the scow, possibly 3 points, by a change of course not by leeway, and if she had not changed there would have been no collision and the clearance would have been at least 100 feet. He was subjected to a severe cross examination but his account of the matter was not seriously affected. His testimony was corroborated by a licensed pilot on the same vessel. Taking the testimony of these witnesses into consideration, I feel constrained to hold that the tug left ample margin for safe passing and that the collision was produced by a change of course on the schooner's part.

Libel dismissed.